UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

DANIEL TEITELL,

                        Plaintiff,

    -v-

THE CITY OF NEW YORK; New York City Police Department ("NYPD") Officer ("P.O.") NUMAEL AMADOR (Shield No. 9643) and P.O. JOHN DOE 1-2, in their individual capacities,

                        Defendants.

**COMPLAINT AND DEMAND FOR A JURY TRIAL**

Index No. 15-CV-4187

-----------------------------------------------------------------x

      Plaintiff Daniel Teitell, by his attorneys Mark C. Taylor and Gillian Cassell-Stiga of Rankin & Taylor, PLLC, for his complaint, does hereby state and allege:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, along with pendant claims for false arrest, false imprisonment, and malicious prosecution under the laws of the State of New York.

2. Plaintiff Daniel Teitell's rights were violated when officers of the New York City Police Department ("NYPD") unconstitutionally detained and arrested plaintiff despite the absence of probable cause. By reason of defendants' actions, including the unreasonable and unlawful seizure of his person, plaintiff was deprived of his constitutional rights.

3. Plaintiff also seeks an award of compensatory and punitive damages and attorneys' fees.

1

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in that plaintiff's claim arose in the Eastern District of New York.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

7. Consistent with the requirements of New York General Municipal Law § 50-e, Mr. Teitell filed a timely Notice of Claim with the New York City Comptroller on or about June 5, 2015 within 90 days of the accrual of his claims under New York law. Thus, this Court has supplemental jurisdiction over Mr. Teitell's claims under New York law because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

8. Mr. Teitell's claims have not been adjusted by the New York City Comptroller's Office.

## PARTIES

9. Plaintiff Daniel Teitell is, and was at all times relevant to this action, a resident of the County of Kings in the State of New York.

10. Defendant The City of New York ("City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City assumes the risks incidental to the maintenance of a police force and police officers as said risks attach to the public consumers of the services provided by the NYPD.

11. NYPD Officer ("P.O.") Numael Amador (Shield No. 9643) ("Amador") and P.O. John Doe 1-2 (referred to collectively as the "individual defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD.

12. The individual defendants are being sued herein in their individual and official capacities.

13. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

14. The individual defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of plaintiff's rights.

15. At all relevant times, the individual defendants were engaged in joint ventures, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

16. The true name and shield number of defendant P.O. John Doe 1-2 is not currently known to the plaintiff.[1] However, he was an employee or agent of the NYPD on the date of the incident. Accordingly, he is entitled to representation in this action by the New York City Law Department ("Law Department") upon his request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that plaintiff intends to name said officer as a defendant in an amended pleading once the true name and

---

[1] By identifying said defendants as "John Doe" or "Richard Roe," plaintiff is making no representations as to the gender of said defendants.

3

shield number of said defendant becomes known and (b) that the Law Department should immediately begin preparing his defense in this action.

## STATEMENT OF FACTS

17. Mr. Teitell was unlawfully arrested by P.O. Amador and P.O. John Doe 1 before 10:00 p.m. on March 29, 2015, in Maria Hernandez Park in Kings County in the State of New York.

18. Mr. Teitell was standing in the park when he saw P.O. Amador and P.O. John Doe 1 approach and interrogate a man seated on a bench.

19. Mr. Teitell filmed the interaction with his cell phone.

20. One of the officers saw Mr. Teitell filming and immediately walked over.

21. Twice the officer asked Mr. Teitell for identification and Mr. Teitell responded, "Am I being detained or am I free to go?"

22. The officer then took the phone out of Mr. Teitell's hand and placed him in handcuffs with the assistance of the other officer.

23. One of the two officers pointed to a sign and informed Mr. Teitell that they could simply issue him a citation for being in the park illegally, but they were choosing to arrest him because he had asserted his rights.

24. Mr. Teitell was not in the park illegally.

25. Mr. Teitell was arrested before 10:00 p.m. and the posted sign confirmed the park closed at 10:00 p.m.

26. John Doe 2, upon information and belief a sergeant, arrived and directed the officers remove the handcuffs.

27. Mr. Teitell waited by the police vehicle as officers ran a warrant search.

28. Mr. Teitell was issued two summons, for Remaining in a Park After Closing (§1-03(a)3), and for Failing to Comply with a Park Sign (§1-03(c)2).

29. The summons were based upon the false statements of P.O. Amador.

30. P.O. John Doe 1-2 failed to intervene in the unlawful arrest of Mr. Teitell.

31. Mr. Teitell was forced to appear in court before both summons were dismissed on June 4, 2015.

<div style="text-align:center">

**FIRST CLAIM**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. §1983**
(Against the individual defendants)

</div>

32. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

33. By their conduct and actions in falsely arresting plaintiff, arresting plaintiff in retaliation for protected activity and the prior restraint of the same, fabricating evidence, and by failing to intercede to prevent the complained of conduct, defendants P.O. Amador and P.O. John Doe 1-2, acting under color of law and without lawful justification, intentionally, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed through 42 U.S.C. § 1983 and the United States Constitution, including its First, Fourth and Fourteenth Amendments.

34. As a result of the foregoing, plaintiff was deprived of liberty, suffered emotional distress, humiliation, loss of property, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM FOR RELIEF
## 42 U.S.C. § 1983
## VIOLATIONS OF THE FOURTH AND FOURTEENTH AMENDMENTS
*(Against the City of New York)*

35. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

36. The individual defendants' acts and omissions described above were carried out pursuant to the City's overlapping customs and practices which were in existence on March 12, 2014 and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the City and its agency, the NYPD.

37. The acts complained of were carried out by the individual defendants in their capacities as police officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

38. The aforementioned custom and practice of the City and the NYPD include, but are not limited to making retaliatory arrests against persons who lawfully photograph, document or record police activity.

39. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in below:

### Journalists and Photographers

a. **May 30, 2007 / Robert Carneval / Carneval v. City of New York, 08 CV 9993 (DAB)(AJP) (S.D.N.Y.)**
A Manhattan photographer, Robert Carneval, was arrested after filming NYPD officers in the East Village as they seized and loaded bikes, which had been locked to lampposts and parking meters, into a police van. After the photographer began filming and discussing the removals with another man, a plainclothes officer asked him for identification. When the photographer stated he had the right to film, the officer led him to a police car, examined his ID, then arrested him. Colin Moynihan, *City Settles with Two Arrested After Police Confrontation*, The New York Times (March 31, 2010), http://cityroom.blogs.nytimes.com/2010/03/31/city-settles-with-pair-arrested-after-police-confrontation/.

b. **November 2011 / Karen Matthews, Seth Wenig, Matthew Lysiak, Patrick Hedlund, Paul Lomax and Julie Walker**
In November of 2011, at least six journalists were arrested while covering the raid and eviction of Occupy Wall Street protesters from Zuccotti Park. Thirteen news organizations in New York City lodged complaints about the treatment of journalists and the suppression of coverage of the event, and ten press clubs, unions, and other groups called for an investigation into the police conduct at issue. CBS New York / AP, *Several Journalists Among Those Arrested During Zuccotti Park* Raid, CBS New York (November 15, 2011) http://newyork.cbslocal.com/2011/11/15/officials-journalists-among-those-arrested-during-zuccotti-park-raid/; Brian Stelter, *News Organizations Complain About Treatment During Protests*, The New York Times: Media Decoder (November 21, 2011) http://mediadecoder.blogs.nytimes.com/2011/11/21/news-organizations-complain-about-treatment-during-protests/.

c. **November 15, 2011 / Timothy Fitzgerald / Rodriguez v. Winski, 12 CV 3389 (NRB) (S.D.N.Y.)**
On or about November 15, 2011, in Zucotti Park, a publicly accessible open space, several police officers grabbed Timothy Fitzgerald, a citizen reporter who was documenting protest activities and police response to same, pulled him to the ground and arrested him.

d. **August 4, 2012 / Robert Stolarik**
Photographer Robert Stolarik, who worked regularly for The New York Times for more than a decade, was charged with obstructing government administration and resisting arrest after taking photographs of a brewing street fight at McClellan Street and Sheridan Avenue in the Bronx. Mr. Stolarik was taking photographs of the arrest of a teenage girl about 10:30 p.m., when a police officer instructed him to stop doing so. Mr. Stolarik said he identified himself as a journalist for The New York Times and continued taking pictures. A second officer appeared, grabbed his camera and "slammed" it into his face, he said. The arresting officer was later indicted for falsifying statements surrounding Ms. Stolarik's arrest. Russ Buettner, *Officer Is Indicted on Charges of Lying About Photographer's Arrest,* The New York Times (Aug. 26, 2013), http://www.nytimes.com/2013/08/27/nyregion/officer-is-indicted-on-charges-of-lying-about-photographers-arrest.html.

e. **September 17, 2012 / Christopher Faraone / Faraone v. City of New York et al, 13 CV 09074 (TPG) (S.D.N.Y.)**
Christopher Faraone, a journalist, was photographing a public demonstration at One Chase Manhattan Plaza when NYPD officers tackled, battered and arrested him. One of the officers directed him to cease his reporting activities within New York City.

f. **September 15-17, 2012 / Julia Reinhart, Charles Meacham, and John Knefel**
Five photojournalists reporting on Occupy Wall Street protesters were arrested in

7

Case 1:15-cv-04187-JG-JO   Document 1   Filed 07/16/15   Page 8 of 14 PageID #: 8

course of their reporting. One photographer was arrested after attempting to take a picture of an officer giving a dispersal order on a sidewalk. Another was forced to the ground and detained, while another was shoved and blocked from taking a photo by a Lieutenant in the NYPD's Legal Bureau. Christopher Robbins, *NYPD's pattern of harassing, arresting journalists continues*, Gothamist (Sept. 19, 2012) http://gothamist.com/2012/09/19/nypds_harassment_of_journalists_con.php.

g. **December 12, 2011 & March 15, 2012 / Paul Sullivan, John Knefel and Justin Wedes / Rodriguez v. Winski, 12 CV 3389 (NRB) (S.D.N.Y.)**
On December 12, 2011, Paul Sullivan, John Knefel and Justin Wedes, citizen reporters who were documenting protest activities and police response to same at the Winter Garden, a publicly accessible open place, were grabbed, pulled to the ground and arrested without warning or probable cause by the NYPD. On March 15, 2012, Mr. Wedes was again threatened with arrest for the same legal activity.

h. **March 2012 / Unknown**
In March of 2012, a cameraman from WABC-TV was struck by an officer at crime scene for unknown reasons. Carlos Miller, *NYPD Cop Assaults News Videographer At Crime Scene*, Photography Is Not A Crime (March 22, 2012) http://photographyisnotacrime.com/2012/03/22/nypd-cop-assaults-news-videographer-at-crime-scene/

i. **November 27, 2012 / Angel Zayas / Zayas v. Kelly, 13 CV 08808 (JMF) (S.D.N.Y.)**
On November 27, 2012, a freelance photographer, Angel Zayas, was arrested for photographing officers effect an unrelated arrest in Grand Central Terminal. Daniel Beekman, *Photographer trying to shoot stop and frisk sues NYC over police harassment*, New York Daily News (December 13, 2013) http://www.nydailynews.com/news/justice-story/photog-shooting-frisking-sues-nyc-harassment-article-1.1546548

j. **January 16, 2013 / Shimon Gifter**
A photographer from VIN News, a media outlet for the Orthodox Jewish community, had his camera seized and thrown to the ground, his memory card erased, and his Blackberry damaged after photographing officers stopping and frisking several young men. The photographer was also handcuffed and held up against a wall before being released with a warning. Boruch Shubert, *Police Brutality in Midwood?*, The Jewish Voice (January 24, 2013) http://jewishvoiceny.com/index.php?option=com_content&view=article&id=2978:police-brutality-in-midwood&catid=106:international&Itemid=289; Sandy Eller, *Charedi Photographer Claims Handcuffed By NYPD After Videotaping Flatbush Police Stop*, Voz Iz Neias? (January 20, 2013). http://www.vosizneias.com/122118/2013/01/20/brooklyn-ny-charedi-photographer-claims-handcuffed-by-nypd-after-videotaping-flatbush-police-stop/.

k. **April 19, 2013 / Justin Thomas / Thomas v. City of New York, 13 CV 6139 (SJ)**

8

(LB) (E.D.N.Y.)
A film student was arrested filming the exterior of the 72nd Precinct on April 19, 2013. Officers confiscated the student's cell phone, camera, and the camera's memory card, as well as his friend's memory card from a camera. Officers failed to remove the correct memory card from the friend's camera, however, leaving evidence of the encounter.

## Concerned Citizens

l.  **February 9, 2005 / Lumumba Bandele, Djibril Toure and David Floyd / <u>Bandele v. The City of New York</u>, 07 CV 3339 (MGC) (S.D.N.Y.)**
    Lumumba Bandele, Djibril Toure and David Floyd were arrested while videotaping two arrests in Bedford-Stuyvesant, Brooklyn, on February 9, 2005. "In trying to stop the police from violating the rights of others, they had their rights violated," said Kamau Franklin, a lawyer with the Center for Constitutional Rights. *Metro Briefing: New York; Manhattan: Lawsuit Against The Police*, The New York Times (April 27, 2007), http://query.nytimes.com/gst/fullpage.html?res=9C02E2DD123EF934A15757C0A9619C8B63.

m.  **September 29, 2009 / Dennis Flores / <u>Mesa v. City of New York</u>, 09 CV 10464 (JPO) (S.D.N.Y.)**
    On September 29, 2009, Dennis Flores was arrested when he photographed NYPD officers using excessive force to disperse a crowd at a festival in the Bronx. At one point prior to Flores' arrest, an NYPD officer stated it was "illegal to photograph police."

n.  **October 17, 2010 / Anibal Ortiz / <u>Ortiz v. City of New York</u>, 11 CV 7919 (JMF) (S.D.N.Y.)**
    On October 17, 2010, Anibal Ortiz was arrested after he began recording NYPD officers, who asked him for identification, with a cell phone camera.

o.  **July 11, 2011 / Caroline Stern and George Hess / <u>Stern v. City of New York</u>, 12 CV 04863 (SAS) (S.D.N.Y)**
    On July 11, 2011, Caroline Stern was arrested and her boyfriend George Hess, was tackled and arrested after he began video recording an encounter with officers in a subway station. Kathianne Boniello, *Couple handcuffed, jailed for dancing on subway platform: lawsuit*, The New York Post (July 8, 2012) http://nypost.com/2012/07/08/couple-handcuffed-jailed-for-dancing-on-subway-platform-lawsuit/

p.  **April 27, 2012 / John Runnells / <u>Runnells v. City of New York</u>, 13 CV 2904 (KBF) (S.D.N.Y.)**
    On April 27, 2012, John Runnells' camera was seized and its footage erased after he video recorded a police traffic checkpoint. Mr. Runnells continued recording the officers after his camera was returned, and he was subsequently arrested. Once again,

his camera was seized and the footage deleted.

q. **June 5, 2012 / Hadiyah Charles / <u>Charles v. City Of New York</u>, 12 CV 06180 (SLT) (SMG) (E.D.N.Y)**
On June 5, 2012 a woman was pushed and arrested for using her phone to video record the stop-and-frisk of three unrelated young men on a public sidewalk. Rocco Parascandola, *Woman suing NYPD for wrongful arrest discovers that a key piece of evidence has mysteriously vanished from the Brooklyn stationhouse*, New York Daily News (October 17, 2013) http://www.nydailynews.com/new-york/brooklyn/brooklyn-precinct-log-book-mystery-article-1.1487721

r. **August 2012 / Unknown**
In August of 2012, a man was threatened with arrest for filming outside about 300 feet away from the security checkpoint at One Police Plaza. Carlos Miller, *NYPD Cop Fails at Intimidating Man From Video Recording Police Headquarters*, Photography Is Not A Crime (August 17, 2012) http://photographyisnotacrime.com/2012/08/17/nypd-cop- fails-at-intimidating-man-from-video- recording-police-headquarters/

s. **January 10, 2012 / Justin Sullivan / <u>Rodriguez v. Winski</u>, 12 CV 3389 (NRB)**
On January 10, 2012, Justin Sullivan was arrested for filming an Occupy Wall Street protest at Grand Central Terminal and his camera was confiscated. Later, Mr. Sullivan returned to the police precinct at the terminal to retrieve his camera and he was re-arrested. A witness reported an officer destroyed Mr. Sullivan's camera.

t. **March 2012 / Unknown**
In March of 2012, an individual video recording officers beating another man with batons was told to leave the scene and threatened with pepper spray.
Carlos Miller, *NYPD Takes Break From Beating Man To Threaten Videographer With Pepper Spray* (March 18, 2012) http://photographyisnotacrime.com/2012/03/18/nypd-takes-break-from-beating-man-to-threaten-videographer-with-pepper-spray/.

u. **September 28, 2012 / Santos Bobet / <u>Bobet v. The City of New York</u>, 14 CV 1396 (WHP)(JLC) (S.D.N.Y)**
On September 28, 2012, at approximately 8:55 p.m., Santos Bobet observed someone being arrested near the Whitlock Avenue 6 Station in the Bronx. After beginning to videotape the arrest, he was arrested by Officer Kelvin Prado, who then along with his partner deleted the video footage.

v. **March 13, 2013 / Ed Garcia Conde**
Ed Carcia Conde was arrested on March 13, 2013 after he used his phone to video record a police officer's interaction with another man. Ben Yakas, *Video: Bronx Man Hauled To Jail For Exercising Right To Videotape Cops*, Gothamist (March 16, 2013) http://gothamist.com/2013/03/16/video_bronx_man_hauled_to_jail_for.php.

w. **May 16, 2013 / Christina Gonzalez and Matthew Swaye**
Two Harlem residents were arrested after they filmed NYPD officers conduct stop-and-frisks at a car checkpoint. Christina Gonzalez and Matthew Swaye said they were returning from a Bronx mall at about 10:30 p.m. when they noticed several vehicles stopped and Gonzalez took out her camera to begin filming. Jeff Mays, *'Professional Agitators' on NYPD 'Wanted' Flier Arrested After Filming Stop*, DNA Info (May 21, 2013), http://www.dnainfo.com/new-york/20130521/central-harlem/professional-agitators-on-nypd-wanted-flier-arrested-after-filming-stop.

x. **August 26, 2013 / Jonathan Harris**
NYPD officers arrested a Bronx teenager, Jonathan Harris, after he was filming the officers attack and threaten two young girls in a Bronx park. The teenager told the officers to leave the girls alone and began filming them with his phone. The officers began chasing him, tackled him and punched him before arresting him. Jennifer Cunningham, *Teens say they were beaten by cops in Bronx park*, New York Daily News (Aug. 29, 2013), http://www.nydailynews.com/new-york/bronx/teens-mauled-cops-article-1.1440394#ixzz2eVh68jgw.

y. **September 19, 2013 / Sean Basinski / Basinski v. The City of New York, 14 CV 1057 (LTS) (S.D.N.Y.)**
On September 19, 2013, a lawyer, Sean Basinski was arrested while using a phone to records police during a rally in front of Midtown North Precinct police station on West 54th Street. Colin Moynihan, *Street Vendors Protest Treatment by Police*, The New York Times (October 2, 2013), http://www.nytimes.com/2013/10/03/nyregion/street-vendors-protest-treatment-by-police.html?_r=0.

z. **June 5, 2013 / Rahul Saksena / Seksena v. The City of New York, 14 CV 5129 (JBW) (LB) (E.D.N.Y.)**
On June 5, 2014, at approximately 10:00 p.m., Mr. Saksena was arrested in retaliation for filming a civilian police interaction in the Bushwick section of Brooklyn.

aa. **September 25, 2013 / Debra Goodman / Goodman v. The City of New York, 14 CV 5261 (CM) (S.D.N.Y)**
Debra Goodman was arrested by two NYPD officer for using her cellphone to videotape an interaction between the officers and a homeless woman.

bb. **March 12, 2014 / Jason Disisto / Disisto v. The City of New York, 15 CV 3296 (GHW) (S.D.N.Y)**
Jason Disisto was assaulted and arrested in retaliation for using his cellphone to videotape an NYPD officer performing an illegal search. Video evidence later revealed contrary to officers' claims, Mr. Disisto never attacked officers as charged. Ann Givens and Pei-Sze Cheng, *I-Team: Dozens Report NYPD Backlash Over Legal Videotaped Encounters*, NBC New York (April 29, 2015). http://www.nbcnewyork.com/news/local/videotaping-cops-nypd-first-ammendment-can-I-tape-police-301551771.html.

11

40. All of the foregoing acts by defendants deprived the plaintiff of federally protected rights, including, but limited to, the constitutional rights enumerated in paragraph 36.

41. Defendant City knew or should have known that the acts alleged herein would deprive the plaintiff of his rights, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

42. Defendant City is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the City and NYPD, and to require compliance with the Constitution and laws of the United States.

43. Despite knowledge of such unlawful de facto policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the City, including Commissioner William Bratton and former-Commissioner Raymond Kelly, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

44. The aforementioned City policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned City

policies, practices and/or customs, the individual defendants felt empowered to exercise unreasonable and wholly unprovoked force against plaintiff, arrest plaintiff without probable cause and then fabricate and swear to a false story to cover up their blatant violations of plaintiff's constitutional rights. Pursuant to the aforementioned City policies, practices and/or customs, defendants failed to intervene in or report other defendants' violation of plaintiff's rights or subsequent perjury.

45. Plaintiff's injuries were a direct and proximate result of the defendant City and the NYPD's wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant City and the NYPD to properly supervise, train and discipline their police officers.

46. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of the plaintiff's constitutional rights.

### THIRD CLAIM FOR RELIEF
### FALSE ARREST AND FALSE IMPRISONMENT
### UNDER THE LAWS OF THE STATE OF NEW YORK
### (Against all Defendants)

47. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

48. By the actions described above, the individual defendants caused to be falsely arrested or falsely arrested plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.

49. The acts and conduct of the individual defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

50. The conduct of the individual defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant City, clothed with and/or invoking state power and/or authority, and, as a result, defendant City is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

51. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## JURY DEMAND

52. Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

a. That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

b. That he be awarded punitive damages against the individual defendants; and

c. That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d. For such other further and different relief as to the Court may seem just and proper.

Dated: New York, New York
July 15, 2015

Respectfully submitted,

By: _____
Gillian Cassell-Stiga
Mark C. Taylor
Rankin & Taylor, PLLC
11 Park Place, Suite 914
New York, New York 10007
t: 212-226-4507